# UNITED STATES DISTRICT COURT
# DISTRICT OF COLORADO

| | |
|---|---|
| JESUS LAMBERTO RAMIREZ LOPEZ, | |
| *Plaintiff*, | No. 20-cv-__1472__ |
| v. | Civil Action |
| KB CUSTOM AG SERVICES, LLC | Jury Trial Demanded |
| *Defendant*. | |

## PLAINTIFF'S ORIGINAL COMPLAINT

1. This is an action for unpaid wages and contract damages brought by Plaintiff Jesus Lamberto Ramirez Lopez ("Ramirez"), who was employed as a Heavy and Tractor-Trailer Truck Driver during 2018 and 2019 by Defendant KB Custom Ag Services, LLC ("KB").  KB misclassified Ramirez as an "Agricultural Equipment Operator" and paid him the lower "adverse effect wage rate" for this work rather than the higher "prevailing wage rate" that is due truck drivers under federal immigration law.  KB failed to pay Ramirez the overtime rate due under the Fair Labor Standards Act ("FLSA") even though Ramirez worked over 15 hours many days, and worked seven days per week.  By this lawsuit, Ramirez seeks the prevailing wage rates due under his contracts, overtime wages due under the FLSA and H-2A regulations, attorney fees, and costs.

## JURISDICTION AND VENUE

2. This court has jurisdiction over this action pursuant to:

   a. 28 U.S.C. § 1331 (Federal Question);

   b. 29 U.S.C. § 216(b) (FLSA); and

   c. 28 U.S.C. § 1367(a) (Supplemental Jurisdiction).

1

3. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2).

## PARTIES

4. Plaintiff Jesus Lamberto Ramirez Lopez ("Ramirez") is an individual natural person who at times has resided in Texas while working for Defendant.

5. Defendant KB Custom Ag Services, LLC ("KB") is a corporation formed and operating under the laws of the State of Colorado. Its registered agent for service of process is Kyle D. Beauchamp, 239 E. 4th Street, Ault, CO 80610.

## STATEMENT OF FACTS

### A. *The H-2A Agricultural Visa Program*

6. Federal law prescribes the terms under which foreigners may enter the United States to work, and what work they may lawfully perform while they are here.

7. The Immigration and Nationality Act ("INA") authorizes our nation's current visa program for agricultural workers, which is commonly known as "the H-2A program" because the INA provision creating this visa category is 8 U.S.C. § 1101(a)(15)(H)(ii)(a). Workers issued these visas are commonly called "H-2A workers."

8. The regulations implementing the H-2A program appear in 20 C.F.R. §§ 655.100 to 655.235 (Chapter 655, Subpart B).

9. Congress stated two fundamental goals for the H-2A program: (1) employ workers who are U.S. citizens or permanent residents rather than foreign workers whenever possible; and (2) prevent foreign workers from adversely affecting the wages and working conditions of U.S. workers. 8 U.S.C. § 1188(a)(1)(A)-(B).

10. Only after an employer identifies specific temporary jobs for which insufficient U.S. workers are available does the INA make visas available to non-immigrant foreign workers who agree to perform those specific jobs at the time and place needed, and for specific pay. *Id.*

11. Employers who seek H-2A workers must file two forms with the U.S. Department of Labor ("DOL"): (a) DOL Form ETA-790, also known as a "Clearance Order." 20 C.F.R. §§ 655.121 and 655.130; and (b) DOL Form ETA-9142, an "Application for Temporary Employment Certification."

12. Forms ETA-790 and ETA-9142 set forth the terms of employment that the applicant employer must offer to all workers for the specific job described in each application, regardless of whether the workers who accept the job are U.S. or foreign workers. *See* 20 C.F.R. § 655.103 (defining "employer").

13. To file an H-2A application (Form ETA-9142), each employer must sign a declaration under "penalty of perjury" stating "that I have read and reviewed this application and that to the best of my knowledge the information contained therein is true and accurate," and any attempt "to aid, abet, or counsel" anyone in submitting any false information in this application is a felony. *Id.*

14. Each clearance order states the wages, term of employment, type of work, site of work, housing, transportation, workers' compensation coverage, and other job conditions that the employer agrees to provide each H-2A worker. 20 C.F.R. §§ 655.103 and 655.122.

15. As a part of each job offer to H-2A workers, employers must provide a written promise to comply with all applicable federal, state, and local employment-related laws and regulations, including the FLSA. 20 C.F.R. § 655.135(e).

16. H-2A employers must pay a wage that is the highest of: the adverse effect wage rate ("AEWR") in effect at the time the work is performed; the prevailing hourly wage or piece rate; or the Federal or State minimum wage. 20 C.F.R. §§ 655.103(b), 655.120(a), and 655.122(l).

17. The federal "overtime" wage is one and a half times the regular rate of pay for all hours in excess of 40 per workweek. 29 U.S.C. § 207.

18. H-2A clearance orders and H-2A regulations state the terms of the contract between each H-2A employer and worker. 20 C.F.R. § 655.122(q).

19. If DOL agrees that insufficient U.S. workers are available to fill the job described in the application and clearance order, and the employment terms stated in these documents are sufficient to avoid an adverse effect on U.S. workers, DOL certifies this fact to U.S. 5enship and Immigration Services ("USCIS") for final approval of H-2A visas. 8 C.F.R. § 214.2(h)(2)(i).

20. Federal law requires employers to verify that all employees are lawfully present in the United States and lawfully permitted to be employed in the manner that the employer directs. 8 U.S.C. §§ 1324a(a) and 1324a(h)(3).

### B. *Defendant's H-2A Applications*

21. Defendant KB sells services to farmers.

22. One service that KB sells to farmers is trucking, namely hauling grain and seed crops and cotton from farms to storage sites, including packing sheds, silos, gins, feedlots, and dairies. *See* https://www.kbcustomag.com/forage-harvesting-services/trucking.

23. On information and belief, starting before 2015 and continuing each successive year through the present, KB sought to bring truck drivers into the United States under the H-2A visa program at the lowest wage rate possible, well below the prevailing wage for truck drivers, by concealing the work to be performed by the foreign workers.

24. In 2018 and 2019, Defendant KB submitted temporary labor certification applications to DOL (Applications), forms ETA-9142 and ETA-790, in which KB sought permission to import H-2A workers, including:

   a. in January 2018, KB submitted DOL Case Number H-300-18026-300682 seeking 85 "Agricultural Equipment Operators" with job code "45-2091" and job title "Farmworker" for the period of April 1, 2018 through January 1, 2019 (attached Exhibit A); and

   b. in January 2019, KB submitted DOL Case Number H-300-19007-309467 seeking 90 "Agricultural Equipment Operators" with the job title "Farmworker" for the period of March 1, 2019 through January 1, 2020 (attached Exhibit B).

25. In Exhibits A and B, KB:

   a. certified that the Applications accurately stated all material terms and conditions of the employment being offered as required by 20 C.F.R. § 653.501(d)(3); and

   b. explicitly and implicitly incorporated into each job offer all employment terms required by 20 C.F.R. Ch. 655 Subpart B.

26. DOL relied on KB's representations, accepted KB's clearance orders in Exhibits A and B, and caused the U.S. Department of Homeland Security ("DHS") to issue Forms I-797B to KB, which permitted KB's designated foreign workers to access H-2A visas.

*C. Plaintiff's Employment*

27. DHS issued dozens of H-2A visas to fill KB's labor needs described in Exhibits A and B, including a visa to Plaintiff Ramirez in April 2018 and another in April 2019.

28. Ramirez worked for KB under his H-2A visas between April and December 2018, and again between April and July 2019.

29. At all times Ramirez diligently performed the job duties assigned to him by KB.

30. Ramirez performed to KB's satisfaction all job duties assigned to him by KB.

31. KB assigned Ramirez to work exclusively as a Heavy and Tractor-Trailer Truck Driver during all times that Ramirez worked for KB in 2018 and 2019.

32. KB provided all vehicles, tools, and equipment necessary for Ramirez and other H-2A workers to perform their work as truck drivers.

33. KB owned or controlled the worksites where the vehicles, tools, and equipment necessary to perform Ramirez's work were stored.

34. KB primarily assigned Ramirez to haul maize, alfalfa, sorghum, and wheat.

35. Every day, Ramirez reported to KB's dispatch yard in Dalhart, Texas, where KB assigned Ramirez an 18-wheel vehicle, and told him where to pick up already-harvested agricultural products from farms, and where to deliver those products at dairy and other cow processing facilities located within the region surrounding Dalhart, Texas.

36. Ramirez then drove to the assigned location, where other workers would load his truck with already-harvested products, after which he would drive the products where KB directed, and other workers would unload his truck.

37. The farming businesses that grew the maize, alfalfa, sorghum, and wheat that Ramirez hauled at KB's direction were separate businesses and not affiliated—by partnership, corporate parent, or subsidiary—with the processing facilities where livestock consumed these products.

38. Ramirez spent almost all of his time driving for KB on public roads, and spent minimal time performing routine maintenance on trucks owned by KB.

39. Ramirez never left the state of Texas in the course and scope of his work for KB.

40. In most weeks, KB caused Ramirez to work in excess of 40 hours per week.

41. Many days Ramirez worked over 15 hours, and he worked seven days per week.

42. KB only paid Ramirez the adverse effect wage rate ("AEWR") for agricultural workers (which was $11.87 in 2018 and $12.23 in 2019 for work in Texas) for every hour that he worked as a truck driver, including hours that he worked in excess of 40 in a workweek.

43. The prevailing wage for Heavy and Tractor-Trailer Truck Drivers, SOC Code 53-3032, in Dallam County, Texas, ranged between $20.35 and 21.05 for 2018 and 2019.

44. By paying AEWR rates for all hours worked, KB failed to pay Ramirez the appropriate prevailing wage for his work pursuant to his H-2A contracts shown in Exhibits A and B.

45. KB failed to pay any overtime wages of one-and-one-half times the prevailing hourly wage rate for Heavy and Tractor-Trailer Truck Drivers promised to Ramirez under the terms of his contract for each hour that he worked over 40 in a workweek. KB only paid the AEWR for all hours, even those hours worked over 40 in a workweek. This pay scheme violates the FLSA.

46. At all times relevant to this action, KB knowingly and willfully failed to pay the required overtime compensation due to Ramirez under the FLSA.

47. At all times relevant to this action, KB paid Ramirez at a rate that was well below the prevailing wage for Heavy and Tractor Trailer Drivers in the Dallam County region of Texas, a market wage of between $20 and $22 per hour in 2018 and 2019.

48. DOL defines the job "Heavy and Tractor-Trailer Truck Driver" with SOC Code 53-3032 as follows: "Drive a tractor-trailer combination or a truck with a capacity of at least 26,000 pounds Gross Vehicle Weight (GVW). May be required to unload truck. Requires commercial drivers' license."

49. The work that KB assigned to Ramirez was that of a Heavy and Tractor-Trailer Truck Driver.

50. The work that KB assigned to Ramirez was not the work that KB promised DOL that KB would assign to H-2A workers, including Ramirez, in Exhibits A and B.

51. DOL defines the job "Agricultural Equipment Operator" with SOC Code 45-2091 as follows: "Drive and control farm equipment to till soil and to plant, cultivate, and harvest crops. May perform tasks, such as crop baling or hay bucking. May operate stationary equipment to perform post-harvest tasks, such as husking, shelling, threshing, and ginning."

52. KB never assigned Ramirez to perform work as described in the preceding paragraph.

53. On information and belief, the trucks and trailers that Ramirez operated were manufactured outside of the state of Colorado, and did not all bear Colorado license plates.

54. At all times relevant to this action, KB has been an enterprise engaged in commerce within the meaning of the FLSA, 29 U.S.C. §§ 206 and 207, in that:

   a. KB employed two or more people to drive vehicles that were manufactured outside the state of Colorado; and

   b. KB has annual gross volume of sales of over $500,000, exclusive of excise taxes at the retail level which are separately stated, as shown in part by the payroll amounts that it promised DOL that it could afford to pay its workers

55. At all times relevant to this action, KB was the "employer" of Ramirez and the other H-2A truck drivers within the meaning of the FLSA, 29 U.S.C. § 203 and 20 C.F.R. § 655.103(b).

56. By choosing to voluntarily participate in the H-2A program in 2018 and 2019, KB agreed to comply with all H-2A regulations.

57. KB offered, and Ramirez accepted, terms of work that included:

   a. the terms offered in Exhibits A and B;

   b. the terms set forth in 20 C.F.R. Ch. 655 Subpart B;

   c. KB's agreement to comply with all federal employment laws, including the FLSA; and

   d. pay at "a wage that is the highest of the adverse effect wage rate in effect at the time the job order is placed, the prevailing hourly or piece rate, the agreed-upon collective bargaining rate (CBA), or the Federal or State minimum wage," 20 C.F.R. § 655.120.

58. During the entire course of Ramirez's employment with KB:

   a. KB failed to pay Ramirez the prevailing wage for the work he performed, which was always higher than the AEWR that KB paid Ramirez; and

   b. KB failed to pay overtime pay of one and one-half times the regular rate of pay for each hour that Ramirez worked over 50 in a workweek.

## CAUSES OF ACTION

59. To support each of the following three causes of action, Plaintiff Ramirez incorporates by reference all paragraphs in the preceding Statement of Facts, and pursuant to Rule 10(c), all statements that appear in the attached Exhibits A and B.

## COUNT I: FLSA OVERTIME WAGES

60. This count sets forth a claim for declaratory relief and damages for KB's violations of the FLSA's overtime requirements.

61. Ramirez was employed by KB within the meaning of the FLSA.

62. During the relevant period, KB violated 29 U.S.C. §§ 207 and 215(a)(2), by employing employees in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, for workweeks longer than 40 hours without compensating these employees for their work in excess of 40 hours per week at rates no less than one-and-one-half times the regular rates for which they were employed.

63. By failing to pay Ramirez overtime wages in each workweek in which he worked over 40 hours, KB willfully violated Ramirez's rights under the FLSA, 29 U.S.C. § 207, for which Ramirez is entitled to relief pursuant to 29 U.S.C. § 216(b).

## COUNT II.  BREACH OF CONTRACT

64. This count sets forth a claim for damages based on KB's breach of the H-2A contracts that are attached as Exhibits A and B.

65. KB offered to Ramirez, and Ramirez accepted, work on the terms stated in Exhibits A and B, which are valid and enforceable work contracts.

66. The work contracts between KB and Ramirez included a promise by KB to abide by federal law and to pay the prevailing wage rate for Heavy and Tractor-Trailer Truck Drivers.

67. Ramirez performed all work assigned to him by KB, and otherwise met all material obligations of his employment by KB.

68. As described above, KB failed to perform its obligations under its employment contracts with Ramirez and materially breached its obligations to Ramirez.

69. Ramirez suffered injuries as a result of KB's breaches for which Ramirez is entitled to relief under the common law of Texas or Colorado, and attorney fees under TEX. CIV. PRAC. & REM. CODE ANN. §§ 38.001 *et seq.*

## COUNT III.  QUANTUM MERUIT

70. Only to the extent that the previous counts do not permit recovery of all damages suffered by Ramirez, this count sets forth a claim for damages in *quantum meruit*.

71. KB directed Ramirez to perform services.

72. Ramirez performed valuable services for KB.

73. KB accepted the benefit of Ramirez's services under circumstances that reasonably notified KB that Ramirez expected compensation for his services.

74. KB knew that Ramirez expected compensation for his services.

75. The above-described actions unjustly enriched KB.

76. Ramirez is entitled to compensation at the lawfully required wage applicable to the work he actually performed, *i.e.*, the appropriate prevailing wage in effect at the time, pursuant to the common law of *quantum meruit*.

## JURY DEMAND

77. Ramirez respectfully asserts his right to a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Jesus Lamberto Ramirez Lopez prays that this Court:

a. cite Defendant KB Custom Ag Services, LLC, to appear and answer herein;

b. declare that Defendant: (a) violated the FLSA's overtime requirements as set forth above; and (b) breached its contracts with Plaintiff;

c. award damages to Plaintiff for Defendants' failure to pay overtime wages as required by the FLSA, and an equal amount in liquidated damages pursuant to 29 U.S.C. § 216(b);

d. award Plaintiff his actual, incidental, and consequential damages caused by Defendant's breach of its contracts with Plaintiff;

e. award *quantum meruit* damages as necessary to afford Plaintiff full relief;

f. award punitive damages as appropriate under law;

g. award Plaintiff the costs of this action and reasonable attorney's fees pursuant to 29 U.S.C. § 216(b) and TEX. CIV. PRAC. & REM. CODE § 38.001;

h. award Plaintiff pre-judgment and post-judgment interest, as appropriate; and

i. grant such other relief as this Court deems just and proper.

May 22, 2020                                        Respectfully submitted,

TEXAS RIOGRANDE LEGAL AID, INC.

/s/ *Jerome Wesevich*
Jerome Wesevich
  Texas Bar No. 21193250
  jwesevich@trla.org
Christopher Benoit
  Texas Bar No. 24068653
  cbenoit@trla.org
1331 Texas Ave.
El Paso, Texas 79901
Tel (915) 585-5120
Fax (915) 533-8823

*Attorneys for Plaintiff*